**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | Case No. 1:94-CR-0313 (CSH) |
| ANGEL PADILLA, | |
| Defendant. | JULY 20, 2021 |

**MEMORANDUM AND ORDER**

**HAIGHT, Senior District Judge:**

Two motions seeking habeas corpus relief are currently pending before this Court. The motions are filed by Angel Padilla , 94 Cr. 313, and by Milvio Duarte, 99 Cr. 192. For reasons that appear hereafter, those two cases are considered together for the purpose of this Memorandum and Order, which gives directions for the cases' future processing.

I

The briefing and consideration of Defendant Angel Padilla's motion for habeas corpus relief pursuant to 28 U.S.C. § 2255 continue apace, in the circumstances this Memorandum describes.

Familiarity with the Court's prior rulings and orders is assumed. For present purposes, it is sufficient to stay that Padilla's habeas motion was generated by the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019),which held that part of the federal firearms statute, 18 U.S.C. § 924(c), was unconstitutional. Violations of § 924(c) are frequently charged, either standing alone, or as the use of a firearm in connection with a different and separately charged

1

predicate offense. A § 924(c) conviction is a serious matter for a defendant, since the statute mandates a five-year term of imprisonment *consecutive* to the sentences on the predicate offenses of conviction. After the Supreme Court in *Davis* invalidated a substantive part of § 924(c), district courts and circuit courts all over the nation began to receive habeas motions from defendants whose conviction and sentence under § 924( c) antedated *Davis*.

While "[t]he Supreme Court did not state that *Davis* was retroactive in *Davis* itself," the Fourth Circuit considered in *In re Thomas*, 988 F.3d 783 (4th Cir. 2021), "whether Davis (1) announced a new rule of constitutional law (2) made retroactive to cases on collateral review (3) by the Supreme Court (4) that was previously unavailable." 988 F.3d at 788, 789. The court further noted: "The government does not address this question in its brief, apparently agreeing with our sister circuits that *Davis* satisfies these requirements." *Id.* at 788 (citing cases in n.4). "That concession is correct." *Id.* The Fourth Circuit held in *Thomas* that "we join our sister circuits in holding that *Davis* applies retroactively to cases on collateral review," reasoning that "*Davis*'s retroactivity has been necessarily dictated by prior Supreme Court cases." *Id.* at 786, 790 (citations and internal quotation marks omitted).

The Second Circuit has applied *Davis* retroactively without discussion. As Judge Wesley noted last month in *United States v. Heyward*, No. 19-1054-CR, __F.4th__, 2021 WL 2638609 (2d Cir. June 28, 2021), the Supreme Court's invalidation in *Davis* of the firearms statute's "residual clause" as unconstitutionally vague "predictably effected a fundamental change in our § 924(c) jurisprudence." 2021 WL 2638609, at *4. Padilla's habeas motion is one of the myriad cases where defendants, seeking to take advantage of that change, contend that *Davis*'s retroactive effect invalidates an earlier § 924( c) conviction and sentence.

2

II

Another such case pending in this District is *United States v. Milvio Duarte*, Case No. 99 Cr. 192. Duarte has also filed a motion for habeas relief based on *Davis*. The persons and facts involved in *Duarte* and *Padilla* are unrelated and entirely different. Duarte was tried and convicted in the Southern District of New York in 1999 and sentenced in 2000. Padilla was tried and convicted in the Southern District of New York in 1995 and sentenced in 1998. What the cases have in common is that I presided over the jury trial in both cases and am accordingly responsible for ruling on both habeas motions.

I am going to treat *Padilla* and *Duarte* as companion cases because, as will be seen from the briefing, the able and experienced counsel for the parties treat them that way. The attorneys are the same in both cases. Padilla and Duarte are represented on these habeas motions by the Federal Defenders of New York. The government is represented by the United States Attorney's Office for this District.

III

The most recent briefs of counsel in these cases focus upon the Second Circuit's efforts to clarify its § 924(c) jurisprudence in the wake of the Supreme Court's decision in *Davis*. The Second Circuit has addressed whether a particular predicate offense constitutes a "crime of violence" within the meaning of § 924(c), which mandates heightened criminal penalties for using or carrying a firearm during or in furtherance of "a crime of violence." The statute defined "crime of violence" in two subparts, which have come to be known as "the elements clause" and "the residual clause." *Davis*, 139 S. Ct. at 2324. In *Davis* the Supreme Court invalidated the residual clause as impermissibly vague. In consequence, for purposes of that statute a "crime of violence" is now

defined *only* as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *United States v. McCoy*, 995 F.3d 32, 52 (2d Cir. 2021) (quoting § 924(c)(3)(A)) (emphasis omitted).

The Second Circuit engages in the same analysis when construing comparable sentence-enhancing language in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *See United States v. Scott*, 990 F.3d 94, 105 (2d Cir. 2021) (*en banc*) ("The term 'physical force' as used in ACCA means '*violent force*,' *i.e.*, 'force capable of causing physical pain or injury to another person.'") (emphasis in original) (citation omitted).

The following cases are illustrative.

*Scott* is an ACCA case which the Second Circuit ultimately decided *en banc*. *See United States v. Scott*, 954 F.3d 74 (2d Cir. 2020), *opinion vacated on reh'g en banc*, 990 F.3d 94 (2d Cir. 2021). The initial panel's decision held by a divided panel, affirming the district court, that the defendant's first-degree manslaughter convictions did not qualify as predicate violent crimes for ACCA purposes because under New York law, first-degree manslaughter can be committed by *omission,* and thus without using force. 954 F.3d at 77-78. Circuit Judge Pooler wrote the majority opinion. Judge Leval joined it and filed a concurring opinion. Judge Raggi wrote a dissenting opinion. After the Second Circuit reheard the case *en banc*, Judge Raggi wrote the majority opinion reversing the district court and directing reimposition of the defendant's original pre-habeas sentence. That opinion concluded: "First degree manslaughter" in violation of the New York Penal Law "is categorically a 'violent felony' under ACCA and a 'crime of violence' under the Career Offender Guideline." 990 F.3d at 125. Judge Pooler and Judge Leval filed separate dissenting opinions, in which Judges Katzmann, Lohier and Carney joined, in full or in part.

4

The *en banc* decision in *Scott* was filed on March 2, 2021. The Second Circuit decided *McCoy*, 995 F.3d 32, on April 22, 2021. It is a § 924(c) case. *McCoy* holds that, under the Supreme Court's decision in *Davis*, a conspiracy to commit a Hobbs Act robbery does not qualify as a § 924(c) crime of violence; but an attempted Hobbs Act robbery does qualify for that purpose.

*United States v. Eldridge*, 2 F.4th 27, 2021 WL 2546175 (2d Cir. 2021), another § 924(c) case, was decided by the Second Circuit on June 22, 2021. The three possible predicate offenses of conviction were kidnaping in aid of racketeering, and either conspiracy to commit Hobbs Act robbery or attempt to commit Hobbs Act robbery. The Second Circuit, affirming the trial court's sentence, said that in light of *Davis* –

> we are left with the following status of each potential basis for Eldridge's § 924(c) conviction: conspiracy to commit Hobbs Act robbery is not a qualifying predicate; kidnaping might or might not be a qualifying predicate; and attempted Hobbs Act robbery is a qualifying predicate.

2021 WL 2546175, at *6. The Second Circuit reasoned that although an invalid predicate should not have been submitted to the jury, the error did not affect defendant's substantial rights –

> because another of the predicate theories – attempted Hobbs Act robbery – remains a valid basis for a § 924(c) conviction. In light of the overwhelming evidence of Eldridge's guilt and the jury's verdicts on other counts, there can be no doubt that the jury still would have returned a guilty verdict on Count Seven even if the only theory presented had been attempted Hobbs Act robbery.

*Id.* at *10.

The Second Circuit decided *United States v. Heyward*, No. 19-054-cr, 2021 WL 2638609 (2d Cir. 2021), on June 28, 2021. It is a § 924(c) case. *Heyward* applied *Davis*, vacated the defendant's conviction under § 924(c), and remanded him for resentencing. The Second Circuit

5

reasoned that because the circumstances of the case show that "Heyward's § 924(c) conviction may very well have been premised on an unconstitutionally vague provision of that statute, we conclude that it would constitute plain error affecting Heyward's substantial rights to permit that conviction to stand." 2021 WL 2638609, at *8. The opinion in *Heyward* distinguished the contrary result in *Eldridge*, which the *Heyward* court characterized as holding a defendant's substantial rights were not affected "where, *unlike here*, it was overwhelmingly likely that any reasonable juror would have convicted him under a properly charged § 924(c) theory." *Id*. (emphasis added) (citing *Eldridge*, 2021 WL 2546175, at *8).

IV

The most recent series of letter briefs of counsel in the Padilla and Duarte motions discuss these Second Circuit cases and arrive at predictably different conclusions. Federal Defenders, representing Padilla and Duarte, say that in each case the § 924(c) conviction must be vacated and the defendant resentenced. The United States Attorney, representing the government, says that in each case the habeas motion should be denied with no relief granted.

The companionable nature of these two motions is demonstrated by two identical letter briefs authored by AUSA Marguerite Colson, both dated and filed on June 24, 2021, one in the Padilla case [Doc. 915] and the other in the Duarte case [Doc. 68]. These are two-page, three-paragraph, single-spaced letters. Each begins by saying: "The Government writes to update the Court regarding the Second Circuit's recent decision in *United States v. Eldridge.*" The letters then discuss *Eldridge* and *Davis* in identical terms, the only differences in the texts appearing in the concluding paragraphs, which reflect the different procedural postures of the Padilla and Duarte cases. It is apparent, as the government's letters recognize, that both cases turn upon the just resolution of the same substantive

issues.

After a further exchange of letter briefs, two contemplated manners of adjudicating these habeas motions emerge. In the Padilla case, Federal Defenders advised the Court in a letter [Doc. 913], dated April 23, 2021, that Federal Defenders, who also represented Scott in the cited case bearing his name, had petitioned the Supreme Court for certiorari to review the Second Circuit's *en banc* decision in that case (discussed *supra*). Sarah Baumgartel of Federal Defenders concluded her letter by saying that "this Court should vacate Mr. Padilla's § 924(c) convictions and resentence him or, alternatively, continue to hold his motion until the disposition of the *Scott* certiorari petition." Doc. 913, at 4.

This letter also advises that the government has petitioned the Supreme Court for certiorari in a Fourth Circuit case, *United States v. Taylor*, 979 F.3d 203, 208 (4th Cir. 2020), which held that attempted Hobbs Act robbery is not a crime of violence because the "substantial step" in furtherance of the attempt "need not be violent," *id.* – a conclusion that seems to conflict with the Second Circuit cases discussed *supra*.

Federal Defenders' subsequent letter brief to this Court [Doc. 916], dated June 29, 2021, refers to the petitions for certiorari in *Scott* and *Taylor* as "two pending petitions for certiorari that may affect the disposition of Mr. Padilla's motion." Doc. 916, at 3   I understand Federal Defenders in that letter to be pressing their alternative contention that I should defer deciding the Padilla motion until the Supreme Court had ruled on those certiorari petitions.

Federal Defenders suggest a different form of resolution for Duarte's habeas motion. Daniel Habib of Federal Defenders responded to AUSA Colson's June 24 letter with a letter dated June 28 [Doc. 69], which requested leave to file a supplemental brief on Duarte's behalf addressing the

7

Second Circuit's decisions in *Eldridge* and *Heyward*. This Federal Defenders letter also states that the government did not object to that request, and the parties proposed a schedule of July 16, 2021, for Duarte's supplemental brief and August 30, 2021, for the government's supplemental response brief. The Court "so ordered" that proposal by endorsement dated June 30. Duarte's supplemental brief [Doc. 71] was timely filed on July 16. Unlike the Padilla case, Federal Defenders in the Duarte case did not suggest that this Court defer decision until the Supreme Court ruled on the certiorari petitions in *Scott* and *Taylor.*

V

The recent briefs of counsel in the Padilla and Duarte motions pending before this Court discuss the Supreme Court's decision in *Davis* and the Second Circuit decisions cited *supra*. Those briefs do not refer to two Supreme Court cases decided after *Davis*: *Borden v. United States,* No. 19-5410, 141 S.Ct. 1817, 2021 WL 2367312 (U.S. June 10, 2021), and *Greer v. United States*, Nos. 19-8709, 20-444, 141 S. Ct. 2090, 2021 WL 2405146 (U.S. June 14, 2021).

The Supreme Court decided *Borden*, an ACCA case, on June 10, 2021, three months after the Second Circuit's *en banc* decision in *Scott*. The Court's plurality opinion held that a predicate offense requiring only a *mens rea* of recklessness cannot count as a "violent felony" under the elements clause of the ACCA. 141 S.Ct. at 1832, 2021 WL 2367312, at *11. That opinion did not command a majority of the Court. *Borden* achieved a 5-4 result only because Justice Thomas concurred in the judgment but on the basis of a different theory.

The holding in *Borden* is not determinative of Padilla's and Duarte's motions, since it cannot be said in either case that the government charged the defendant with reckless conduct. However, the plurality opinion's reasoning is instructive in deciding whether to apply the elements clause of

a sentence-enhancing statute. "To decide whether an offense satisfies the elements clause," the Court said in *Borden*, "courts use the categorical approach," which "means asking whether a state offense necessarily involves the defendant's 'use, attempted use, or threatened use of physical force against the person of another.'" 2021 WL 2367312, at *3 (citations omitted). "If any – even the least culpable – of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate." *Id.* The *Borden* plurality held that offenses with a *mens rea* of recklessness do not qualify as violent offenses under the ACCA because "[t]hey do not require, as ACCA does, the active employment of force against another person." *Id.* at *12.

*Greer*, which the Supreme Court decided on June 14, 2021, was a direct appeal from a conviction for a firearms-possession offense, where the trial court erred in failing to charge the jury that the government had to prove the defendant knew he was a felon when he possessed the firearm. The Court posed the question whether that error "affected the defendant['s] 'substantial rights,'" and rejected the appeal because defendant "has the burden of showing that, if the District Court had correctly instructed the jury on the *mens rea* element of a felon-in-possession offense, there is a 'reasonable probability' that he would have been acquitted," a burden defendant failed to carry. 141 S. Ct. at 2097.

In the course of any further briefing on the Padilla and Duarte motions, counsel may wish to consider the effect, if any, of these Supreme Court decisions on the issues presented.

VI

It is characteristic of the manner in which the habeas motions of Padilla and Duarte have evolved that, on occasion, a significant event occurs after counsel had briefed the case and it was

9

pending decision by the district court. The Second Circuit's *en banc* decision in *Scott* furnishes an example. Federal Defenders and the United States Attorney submitted letter briefs relying (in different ways) upon the initial panel decision; the contrary *en banc* decision required counsel to recast their arguments.

Another change of circumstances now presents itself. As noted *supra*, Federal Defenders asked this Court to defer deciding the Padilla case (and by extension, Duarte as well) until the Supreme Court ruled on the certiorari petitions in *Scott,* from the Second Circuit, and in *Taylor,* from the Fourth Circuit. We are again overcome by events. On July 2, the Supreme Court granted certiorari in *Taylor. See United States v. Taylor*, No. 20-1459, 2021 WL 2742792, at *1 (U.S. July 2, 2021).

The Fourth Circuit filed its opinion in *Taylor* on October 14, 2020. It held that attempted Hobbs Act robbery was not categorically a "crime of violence" as required to support a § 924( c) conviction. The Fourth Circuit noted and disagreed with Ninth, Seventh and Eleventh Circuit cases holding that attempted Hobbs Act robbery *does* qualify as a crime of violence" – "those courts adopt the same flawed premise that the Government recites here," 979 F.3d at 208. Subsequently, in *McCoy* the Second Circuit also held that an attempted Hobbs Act robbery was a crime of violence. There is a conflict between the circuits, the government was aggrieved by the Fourth Circuit's decision in *Taylor*, and the Supreme Court has granted the government's certiorari petition in that case. I do not presume to predict what the Supreme Court will do, but one must acknowledge the possibility that the Court may overrule *Taylor*, in a manner adverse to the contentions of Padilla and Duarte. The Fourth Circuit in *Taylor* relied *inter alia* on *Davis,* 979 F.3d at 206, and Padilla and Duarte place primary reliance on *Davis*.

Federal Defenders' certiorari petition in *Scott* is pending. The National Association of Criminal Defense Lawyers has filed an amicus brief supporting the petition. The government's time to answer the petition was extended to July 16, 2021. Given the pronounced divisions in the Second Circuit's *en banc* decision, there is reason to think that certiorari may be granted in that case as well. This is a complex and important area of the law in which the Supreme Court has expressed a recent and, it would appear, a continuing interest.

VII

The question now arises: What is the proper course to follow in the habeas motions of Padilla and Duarte?

Having considered the cited cases and the presently existing circumstances, the Court reaches these conclusions:

First, this Court's decisions on the Padilla and Duarte motions will be deferred until (1) the Supreme Court has decided the *Taylor* case, and (2) the Supreme Court has granted certiorari and decided the *Scott* case, or denied certiorari. Until the Supreme Court's adjudications on both cases, *Taylor* and *Scott,* are complete, it would not be sensible for this Court to adjudicate the habeas motions of either Padilla or Duarte. The distinct possibility exists that the Supreme Court's rulings in *Taylor* and *Scott* may affect the disposition of the Padilla and Duarte cases.

Second, this Court will decide the Padilla and Duarte habeas cases at about the same time. That is not to say that they will be decided the same way. Both habeas motions may succeed; both may fail; one may succeed and the other fail. This Memorandum neither expresses nor intimates the Court's view as to the merits of either motion. That is for another day. However, the cases present significant common questions, and their resolution by this Court may give rise to related appeals.

There is much to be said for deciding these cases together in time, rather than separated by months.

Third, the Court adheres to its order allowing supplemental briefs by August 30, 2021, in the Duarte case. Counsel are also advised herein that they may submit supplemental briefs in the Padilla case, also not later than August 30, 2021, if they wish to do so. However, counsel may prefer to defer further briefing until the Supreme Court's adjudications on the *Taylor* and *Scott* cases have been completed. I leave the submission of supplemental briefs at this time to counsel. If they wish to submit them, I will read them.

## VIII

The effect of this Memorandum and Order will be to delay this Court's decision on the motions Mr. Padilla and Mr. Duarte have made for habeas corpus relief which, if granted, might reduce their sentences. I sympathize with the impatience they may feel, but the complexities of the questions these cases raise require these procedures. Indeed, it is counsel for Mr. Padilla who suggested that this Court defer deciding this case until the Supreme Court ruled on the *Taylor* certiorari petition.

A Memorandum and Order consistent with this one is being filed concurrently in the Duarte case.

The foregoing is SO ORDERED.

Dated:  New Haven, Connecticut
        July 20, 2021

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge