UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

ANGEL PADILLA,

Defendant.

No. 1:94-CR-0313 (CSH)

NOVEMBER 8, 2023

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR HABEAS CORPUS RELIEF TO VACATE HIS SENTENCE UNDER 28 U.S.C. § 2255

**HAIGHT, Senior District Judge:**

Defendant Angel Padilla, currently incarcerated in a federal prison following his conviction by a jury on criminal charges in this Court, now moves for habeas corpus relief pursuant to 28 U.S.C. § 2255.

Padilla's charges of conviction included violations of the federal firearms statute, 18 U.S.C. § 924(c). He received separate and consecutive sentences on those counts, as the firearms statute requires. Padilla's present habeas motion contends that most of these § 924(c) convictions are legally invalid, as the result of the retroactive effect of an intervening Supreme Court decision. Padilla asks that those convictions be vacated and he be resentenced.

For the most part, the government opposes Padilla's habeas motion. The government consents to the vacatur of two of Padilla's § 924(c) convictions, defends the others, and contends that in the circumstances of the case, no resentencing of Padilla is necessary.

This Order determines the further governance of the case.

1

## I

Padilla's habeas motion is confined to his several convictions under the federal firearms statute. After jury trial, Padilla challenges the legal validity of those convictions. Other charges of conviction are not directly implicated on the motion, but they provide background to the imposition of punishment upon Padilla for firearms violations.

The federal firearms statute, § 924(c), "authorizes further punishments for those who use a firearm in connection with a 'crime of violence.'" *United States v. Taylor*, 596 U.S. ____, 142 S. Ct. 2015, 2019, 213 L. Ed. 2d 349 (2022). In the statute's original form, a "crime of violence" was defined by § 924 (c)(3) as "a felony offense that: (A) has as an element the use, attempted use, or threatened use of physical force" against the victim, "or (B) that by its nature, involves a substantial risk that physical force" may be used against the victim. Earlier decisions construing this statute termed § 924(c)(3)(A) as "the elements clause" and § 924(c)(3)(B) as "the residual clause" of the statute. *See Taylor*, 142 S. Ct. at 2019.

## II

The reach and effect of the firearms statute were changed when the Supreme Court held in *United States v. Davis*, 588 U.S. ____, 139 S. Ct. 2319, 204 L. Ed. 2d 757 (2019), that § 924(c)(3)(B)'s residual clause was unconstitutionally vague. In consequence, the Court refused to enforce a conviction and sentence premised on its terms. Subsequently, the petitioner in *Taylor* "asked the court to apply *Davis* retroactively and vacate his own § 924(c) conviction and sentence." 142 S.Ct. at 2019. The Court noted in its *Taylor* decision that the government "did not seek to revisit *Davis* or oppose its retroactive application to Mr. Taylor's case." *Id*. The Court's decision in *Taylor* applies retroactively to the facts found in that case the principles the Court declared in

*Davis.*

The Second Circuit has routinely applied *Davis* retroactively to a line of more recent cases, which turn upon the existence *vel non* of a crime of violence as a predicate condition to prosecution under § 924(c) of the firearms statute. *See, e.g., United States v. Pastore*, 83 F.4th 113 (2d Cir. 2023), filed by the Second Circuit on October 2 of this year. The Second Circuit said in *Pastore* that "[i]n *Davis*, the Supreme Court held that 18 U.S.C. § 924(c)(3)(B), often called section 924(c)'s 'residual clause,' is unconstitutionally vague," a holding whose retroactive effect the Second Circuit described in *Pastore*. 83 F.4th at 118 (quoting *Davis*, 139 S. Ct. at 2336). "The question now before us is whether any of the predicate crimes underlying [the defendant's] section 924(c) convictions are 'crimes of violence' under section 924(c)'s remaining 'elements' clause." *Id.* To the same effect, in light of the Supreme Court's holding in *Davis* that the residual clause was unconstitutional, the Second Circuit stated in *United States v. Laurent*, 33 F.4th 63, 84 (2d Cir. 2022), that "[t]o sustain the Defendants' § 924(c) convictions, we must find that their predicate offenses are crimes of violence under the elements clause."

In the case at bar, Padilla's habeas motion poses the same question. The answer to that question will determine the validity of Padilla's several section 924 (c) convictions.

**III**

Given the deplorable prevalence of guns in the streets, homes and offices of the United States, it is not surprising that the retroactive application of the Supreme Court's decision in *Davis* brought about a tsunami of constitutional habeas motions by incarcerated individuals whose underlying crimes of conviction and sentence included a violation of the subsequently invalidated "residual clause" in § 924(c)(3)(B) of the firearms statute. Prior to *Davis*, such defendants received

3

lengthy sentences. The *Davis* ruling and its progeny may provide a constitutional key to the prison door.

Padilla's habeas motion is illustrative of this sort of case. His motion [Doc. 897] argues at page 7 that "the bulk" of Padilla's "§ 924( c) convictions are legally invalid and should be vacated" because they "are predicated on offenses that qualified as crimes of violence only under the statute's residual clause, and do not categorically qualify as crimes of violence under the remaining elements, or force, clause." Padilla contends on this habeas motion that following vacatur of the § 924 sentences, he should be resentenced on the remaining, valid charges.

The government opposes the extent of this prayed-for habeas relief. In its principal brief [Doc. 899] at page 5, it states that "[f]ollowing *Davis*, the Government has consented to vacate" two specific "§ 924(c) convictions where they rest solely on 'crimes of violence' as defined by the residual clause." But the government contends that other § 924( c) violations, which Padilla says should be vacated, should instead be retained, since in the government's view those convictions "remain valid as they are predicated on at least one 'crime of violence' as defined by the physical force clause of § 924(c) [as opposed to the constitutionally infirm residual clause] or on a drug trafficking crime." Doc. 899, at 5.

The government also contends that resentencing of Padilla is not required because following his conviction at trial, Padilla was sentenced to several *mandatory* life sentences on unchallenged counts of conviction that do not involve § 924(c). Consequently, Padilla's "overall sentence" would not be affected by a vacatur of his § 924(c) sentences, so that "[r]esentencing . . . [would] thus [be] unneeded." *Id.* at 19-20.

It is necessary to consider in greater detail the extent to which the parties disagree with

4

respect to the proper resolution of Padilla's habeas motion.

Ultimately, the Court will decide Padilla's habeas motion on the facts presented by the record, viewed in the light of governing law declared by the Supreme Court and the Second Circuit.

## IV

### A

The underlying facts in this case, of a singularly violent nature, began in the 1990s, in Bronx County of New York City. At the beginning of 1992, Angel Padilla, also known as "Cuson," was a co-leader with his partner, one George Calderon, of a racketeering enterprise called "C & C." The C & C gang extorted "rent" from local drug dealers in a several square-block section of the Bronx. Drug dealers made these payments to obtain C & C's permission to sell drugs in the affected area, and to receive the gang's protection from non-paying dealers, who were likely to be killed by C & C members if they had the ill-advised effrontery to sell drugs to the public without paying rent to the organization.

The C & C organization "committed many violent crimes both to further its extortionate goals and to discipline its own members." *United States v. Padilla*, 203 F.3d 156, 158 (2d Cir. 2000) (on direct appeal). Rejecting Padilla's direct appeal from his conviction for participation in the C & C crimes, the Second Circuit stated:

> In 1992, after a rift formed within C & C's ranks, Padilla hired Rodriguez, a professional hitman, to kill his onetime partner Calderon. A shooting war broke out, leaving Calderon and many C & C members dead before the police arrested Padilla, Rodriguez, and sixteen of their co-defendants. All of the defendants save Padilla and Rodriguez pled guilty prior to trial.

203 F.3d at 158.

**B**

C & C's criminal conduct first came to the attention of the New York City Police Department ("NYPD"), which initiated an investigation and undertook surveillance. A time then came when the NYPD combined its efforts with those of the federal government, operating through the office of the United States Attorney for this District. When the state and federal law enforcement authorities, acting jointly, reached the point of filing charges against C & C and its members, those charges took the form of an indictment returned by a federal grand jury in the name of the United States, at the behest of the United States Attorney.

The first version of the charging instrument in this case took the form of an indictment returned on September 30, 1994, by a federal grand jury in this District. The prosecutors drafted a single instrument containing 78 separate counts, which charged Padilla and 17 co-defendants (or some of them) with conspiring to commit or substantively committing various specific crimes of violence or distribution of drugs. The indictment also charged Padilla and other defendants with violations of the firearms statute, 18 U.S.C. § 924(c).

A number of co-defendants pleaded guilty and were sentenced. Others were severed for trial. In the event, Padilla and Ivan Rodriguez (the hired hitman and one of Padilla's 17 co-defendants) were tried together on the counts in a further superseding indictment which named them. I presided over a jury trial which began in February 1995 and ran through May 1995. Padilla was convicted by the jury on all 39 counts that named him. After post-trial motion practice, I sentenced Padilla on June 25, 1998, in accordance with the sentencing statutes and guidelines then in effect.

Padilla's direct appeal was rejected by the Second Circuit. *See United States v. Padilla*, 203 F.3d 156, 158 (2d Cir. 2000). Several efforts by Padilla to obtain collateral review also failed.

However, on February 27, 2020, the Second Circuit granted Padilla's application for leave to file a successive 28 U.S.C. § 2255 habeas motion challenging his § 924(c) firearm convictions. Padilla based that habeas motion on the retroactive effect of the Supreme Court's constitutional decision in *Davis*. That is the motion presently before the Court for decision, following elaborate briefing by able counsel: the Federal Defenders of New York for Padilla, and the United States Attorney for the S.D.N.Y. for the government.

V

The issues that arise from the retroactive application of the *Davis* holding are illustrated by decisions involving convictions under the Hobbs Act, 18 U.S.C. § 1951(a). "The Hobbs Act makes it a federal crime to commit, attempt to commit, or conspire to commit a robbery with an interstate component." *Taylor*, 142 S. Ct. at 2016 (citing § 1951(a)).

"It is now established that Hobbs Act conspiracy is not a crime of violence within the meaning of § 924(c)." *United States v. McCoy*, 995 F.3d 32, 53 (2d Cir. 2021) (citing cases).[1] Moreover, in *Taylor* the Supreme Court held that "attempted Hobbs Act robbery is not categorically a 'crime of violence' under [18 U.S.C. §] 924(c)." *United States v. Waite*, No. 18-2651, 2023 WL 3730447, at *1 (2d Cir. May 31, 2023) (citing and quoting *Taylor,* 142 S. Ct. at 2020-21).

Accordingly, the separate and sentence-enhancing provisions of § 924(c) cannot be imposed upon a defendant whose only transgression was an attempt to commit the underlying crime, or conspiring to do so. The Second Circuit said in *McCoy*, 995 F.3d at 52, that "for purposes of § 924(c) a 'crime of violence' is now defined only as a felony" by the elements clause in

---

[1] *Cert. granted, judgment vacated sub nom. Nix v. United States*, 142 S. Ct. 2860, 213 L. Ed. 2d 1085 (2022), and *cert. granted, judgment vacated*, 142 S. Ct. 2863, 213 L. Ed. 2d 1087 (2022).

subparagraph (A) of the firearms statute. It follows that "for a section 924(c) conviction to stand based on a predicate crime of violence, that crime of violence must be 'a felony that has as *an element* the use, attempted use, or threatened use of physical force against the person or property of another." *Pagan v. United States*, 568 F. Supp. 3d 156, 161 (D. Conn. 2021) (quoting § 924(c)(3)(A) ) (emphasis added). If the government fails to allege or prove that predicate element, a conviction and sentence purportedly based upon the gun statute must be vacated and the defendant resentenced.

These principles are easy enough to comprehend and implement if the defendant in question was involved in a single underlying crime: say, robbing a gas station in violation of the Hobbs Act. The question becomes more complicated when the defendant is charged with and convicted of a series of separate and related crimes. The case at bar presents such a situation because Padilla was charged with being the head of a criminal gang and participating in the commission of a number of violent crimes. Several of those underlying crimes form charges on which Padilla was convicted at trial, and now challenges on this habeas petition.

## VI

Angel Padilla and a co-defendant, Ivan Rodriguez, went to trial on a superseding indictment which, as noted, identified Padilla as the leader of a violent criminal gang. Padilla and Rodriguez were severed from the initial indictment, which charged Padilla and 17 other gang-related individuals. At his severed trial, Padilla was convicted of crimes alleged in 39 separate counts of the superseding indictment. Those counts consisted of racketeering and racketeering conspiracy; conspiracy to kidnap and kidnaping; conspiracy to commit murder; murder in aid of racketeering and attempted murder; conspiracy to distribute heroin; and extortion and conspiracy to commit extortion.

Additionally, the superseding indictment charged Padilla with a number of violations of the federal firearm statute, 18 U.S.C. § 924(c). These are the counts that are relevant to Padilla's present habeas motion. They charged Padilla with the use of a firearm in relation to crimes of violence, in violation of § 924(c).

Specifically, Padilla was convicted on eleven firearm counts under § 924(c). Those counts bore indictment numbers 59, 60, 65, 67, 69, 70, 72, 73, 76, 77 and 78.[2] Each firearm count accompanied a particular substantive or conspiracy charge alleging use of a gun against a named victim.

Padilla's present habeas motion contends that the firearms convictions "are legally invalid and should be vacated" because "these § 924(c) convictions are predicated on offenses that qualified as crimes of violence only under the [firearms] statute's residual clause, and do not categorically qualify as crimes of violence under the remaining elements, or force, clause." Padilla's Motion to Vacate [Doc. 897], at 7. Thus, the habeas motion depends upon the Supreme Court's decision in *Davis,* 139 S. Ct. 2319, and its progeny.

The government's initial brief in opposition [Doc. 899] to Padilla's habeas motion acknowledged at page 5 that the Supreme Court's decision in *Davis* "struck down the residual clause of § 924(c)" as unconstitutional, with the effect of "leaving only the physical force clause to define a 'crime of violence.'" The government's brief agreed that "kidnaping, conspiracy to kidnap,

---

[2] Padilla clarifies in a footnote to his motion:

In Count 77, Mr. Padilla was convicted of using a gun in connection with a drug trafficking offense. That count is not the subject of this motion.

Doc. 897, at 4 n.3.

9

extortion, conspiracy to extort, and conspiracy to murder do not qualify as crimes of violence under the physical force clause, and that Padilla's § 924(c) convictions predicated on those crimes alone cannot stand." Doc. 899, at 5. In consequence, the government consented in that brief to the "vacatur of Counts 60 and 78." *Id*. However, in the government's view, Padilla's other § 924(c) convictions "remain valid as they are predicated on at least one 'crime of violence' as defined by the physical force clause of § 924(c) or on a drug trafficking crime." *Id*. In making that argument, the government took the position that charges of murder, attempted murder, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), included in the allegations against Padilla in the indictment, constituted "crimes of violence" for § 924(c) purposes. *Id.* at 7-8.

Padilla's reply brief [Doc. 905] contended that murder, attempted murder, and RICO were *not* "crimes of violence" under the firearms statute, as construed by *Davis*. Doc. 905, at 1-4. On that basis, Padilla pressed his motion to vacate all the convictions under the indicated counts. His reply brief at page 3 placed primary reliance upon the Second Circuit's opinion in *United States v. Scott*, 954 F.3d 74 (2d Cir. 2020).[3] The Second Circuit there held that under New York law the crime of first-degree manslaughter was *not* a categorical crime of violence under the comparable provisions of the Armed Career Criminal Act. 954 F.3d at 87 (citing 18 U.S.C. § 924(e)(2)(B)). That decision supported Padilla's contention that he could not be validly charged under § 924(c).

The basis for that contention was undermined when the Second Circuit granted a rehearing *en banc* in *Scott,* vacated its prior opinion, and held, contrary to that earlier ruling, that New York first-degree manslaughter *did* qualify as a categorically violent crime under the pertinent statute.

---

[3] *Opinion vacated on reh'g en banc,* 990 F.3d 94 (2d Cir. 2021).

*Scott*, 990 F.3d at 123 ("[W]e conclude that New York first-degree manslaughter is a categorically violent crime under both the ACCA and Career Offender Guideline force clauses because, whether a defendant acts by commission or omission, in every instance, it is his intentional use of physical force against the person of another that causes death."). The Supreme Court denied certiorari in *Scott*, 142 S. Ct. 397 (Mem.), 211 L. Ed. 2d 212 (2021).

## VII

This case turns, then, upon the constitutional validity of the federal firearms statute, 18 U.S.C. § 924(c), and that statute's applicability to the crimes for which Angel Padilla was tried and convicted.

The Supreme Court decided the constitutional issue in *Davis* and *Taylor*. Because the rulings in those cases are retroactive, lower courts are left to ponder "What has God wrought" in the firearms law governing a particular case.[4] The question arises frequently because of the prevalence of guns in contemporary American society. The Supreme Court gave answers in *Davis* and *Taylor* when it decided those cases. However, the Court denied certiorari in *Scott*, so that case is one of a series of cases where the Second Circuit undertook to give the answers.

The most recent of these is *United States v. Pastore*, 83 F.4th 113 (2d Cir. 2023), a decision on rehearing filed by the Second Circuit this month. In *Pastore*, the co-defendant and appellant, one Salvatore Delligatti, a participant in the Genovese Crime Family, was tried by a jury on charges of racketeering conspiracy, conspiracy to commit murder in aid of racketeering, attempted murder in

---

[4] This is a translation of a phrase from the Book of Numbers (Numbers 23:23) and was the first original phrase typed by Samuel Morse in a test transmission of his Baltimore-Washington telegraph line in 1844. In the case at bar, the lower courts must determine the effects of the Supreme Court's *Davis* and *Taylor* rulings.

11

aid of racketeering, conspiracy to commit murder for hire, operating an illegal gambling business, and (in a final count) using and carrying a firearm during and in relation to a crime of violence, in violation of the firearms statute. Delligatti was convicted and sentenced on all counts. His appeal, the Second Circuit said, "requires us to determine whether attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), is a crime of violence as defined in 18 U.S.C. § 924(c)(1)(A)(i)." 83 F.4th at 115.

In an earlier opinion in the case, reported at 36 F.4th 423 (2d Cir. 2022), the Second Circuit answered that question in the affirmative, reasoning that "one of the predicate offenses underlying the section 924( c) conviction – attempted murder in aid of racketeering, premised on attempted murder under New York law  – [was] a crime of violence." 36 F.4th at 426.[5] The Second Circuit had filed its earlier opinion in *Pastore* but not yet issued its mandate when the Supreme Court filed its decision in *Taylor*. The appellant in *Pastore*, disappointed by the Second Circuit's opinion, petitioned for a panel rehearing or rehearing *en banc*, "arguing primarily that our opinion was inconsistent with the Supreme Court's reasoning in *Taylor*." 83 F.4th at 116.

The Second Circuit granted Delligatti's petition for rehearing, withdrew its original opinion, and filed the amended opinion "to address the arguments made by Delligatti in light of *Taylor*." *Id*. The Second Circuit noted: "Our prior opinion in this case was delayed by the panel's need to await its turn in a queue of cases impacted by the Supreme Court's ruling in *Davis* interpreting the term 'crime of violence' in section 924(c)." *Id.* at 116 n.2 (citing *United States v. Laurent*, 33 F.4th 63, 73 n.3 (2d Cir. 2022)).

On rehearing the Second Circuit, again construing New York law, adhered to its original

---

[5] *Opinion withdrawn and superseded on reh'g*, 83 F.4th 113 (2d Cir. 2023).

disposition of *Pastore*:

> [B]ecause second-degree murder under New York law is a crime of violence, there can be no doubt that attempt to commit second-degree murder under New York law is itself categorically a crime of violence.
> . . .
> . . . Since this conviction for attempted murder in aid of racketeering serves as one of the predicate offenses underlying Delligatti's section 924(c) conviction, we uphold the section 924(c) conviction and affirm the judgment of the district court.

83 F.4th at 120, 122.

The basic question presented in *Pastore*, as phrased by the Second Circuit, is "whether any of the predicate crimes underlying Delligatti's section 924(c) conviction are 'crimes of violence' under section 924(c)'s remaining 'elements' clause." *Id.* at 118. The adjective "remaining" reflects the fact that the "residual" clause of the firearms statute, the alternative definition of a "crime of violence," was held unconstitutional by the Supreme Court in *Davis*. *Pastore* and other Second Circuit cases instruct district courts on how to interpret and apply the "elements" clause in particular cases.

The Second Circuit's opinion on rehearing in *Pastore* reviews pertinent decisions and reiterates: "To determine whether an offense is a crime of violence under the elements clause, courts employ what has come to be known as the 'categorical approach.'" *Id.* (citation and some internal quotation marks omitted). A district court applying the categorical approach does not consider the facts of the case in question. Rather, the court identifies "the minimum criminal conduct necessary for conviction under a particular statute by looking only to the statutory definitions – *i.e.*, the *elements* – of the offense." *Id.* (emphasis added) (citation, internal quotation marks, and brackets omitted). The court then evaluates "whether this minimum conduct falls within the definition of a

13

crime of violence under section 924(c)(3)(A)." *Id*. (citation and internal quotation marks omitted).

In *Pastore*, the Second Circuit went on to say:

> Although determining the elements of a particular statute is usually a straightforward endeavor, that is not always the case. For certain statutes that "list elements in the alternative, and thereby define multiple crimes," we have deemed the statute to be divisible and applied a "modified" categorical approach.

*Id.* (quoting *Mathis v. United States*, 579 U.S. 500, 500-01 (2016)). Under the modified categorical approach, the court reviews "a limited class of documents from the record of conviction to determine what crime, with what elements, a defendant was convicted of." *Id*. at 118-19 (citations and internal quotation marks omitted). In that endeavor, the court "may consult the indictment, jury instructions, or plea agreement and colloquy to determine the offense of conviction." *Id.* at 119 (citation and internal quotation marks omitted). Having made that determination, courts "then return to the categorical analysis and compare the elements of the offense of conviction with section 924(c)(3)(A)'s definition of a crime of violence." *Id.* (citation and internal quotation marks omitted).

*Pastore* further instructs that "[t]o determine whether Delligatti's section 924(c) charge is properly based on a crime of violence, we must determine whether any one of the section 924(c) predicate offenses listed in his indictment – racketeering conspiracy, conspiracy to commit murder in aid of racketeering, attempted murder in aid of racketeering, and murder-for-hire conspiracy – categorically involves the use of force." *Id.* (citations and internal quotation marks omitted). At that point in the analysis the *Pastore* appellant lost his case: the Second Circuit concluded that attempted murder *was* a categorical crime of violence under governing New York law and consequently served as a predicate offense for Delligatti's § 924(c) conviction. *Id.* at 121-22. The

Second Circuit then affirmed that conviction. *Id.* at 122.

## VIII

At the time of Padilla's indictment and trial, § 924(c)(3) of the firearms statute contained alternative definitions of a "crime of violence," the event that triggers the statutory violation and punishment. Those definitions were found in § 924(c)(3)(A) and § 924(c)(3)(B). Padilla's trial and sentence antedated the Supreme Court's decision in *Davis*, which invalidated the subsection (3)(B) definition of "crime of violence" and left subsection (3)(A) as the sole operative provision.

*Davis* governs Padilla's case retroactively. The present habeas motion turns on whether *Davis* and its progeny require vacatur of Padilla's § 924(c)(3) convictions. That statute's alternative definitions of the "crime of violence" element require me, as instructed by *Pastore*, to regard the statute as divisible and apply the modified categorical approach. In doing so, I consult the indictment and jury instructions "to determine what crime, with what elements, a defendant was convicted of," and then "compare the elements of the offense of conviction with section 924(c)(3)(A)'s definition of a crime of violence." *Pastore*, 83 F.4th at 119 (citations and internal quotation marks omitted),

Applying that analysis to Padilla's habeas motion, it follows that if a particular conviction of Padilla for violating § 924(c)(3) was based on a crime of violence as narrowly defined by § 924(c)(3)(A), that conviction is valid, and to that extent his habeas motion fails. On the other hand, if a § 924(c) conviction is based solely upon a crime of violence of the sort defined by § 924(c)(3)(B), Padilla's habeas motion succeeds and that conviction must be vacated.

## IX

Complexities in Padilla's habeas motion arise from his numerous and varied convictions,

which reflect the government's theory of its case against Padilla, proved at trial, that Padilla headed and directed the activities of the violent Cuson gang. A number of separate murders, of various gang-related victims, were specifically alleged in the superseding indictment and proved at trial.

This Court entered its judgment and sentences on Padilla on June 25,1998 [Doc. 491]. The judgment recites on page 1 that "[t]he sentence is imposed pursuant to the Sentencing Reform Act of 1984." Padilla was convicted on one count of "Racketeering," in violation of 18 U.S.C. §§ 1961 and 1962(c); one count of "RICO Conspiracy," in violation of § 1962(d); three counts of "Conspiracy to Kidnap," in violation of § 1959(a)(5); three counts of "Kidnapping," in violation of § 1959(a)(1) & 2; seven counts of "Conspiracy to Commit Murder," in violation of § 1959(a)(5); eight counts of "Murder in Aid of Racketeering," in violation of § 1959(a)(1) & 2; two counts of "Attempted Murder," in violation of § 1959(a)(5) & 2; one count of "Conspiracy to Distribute Heroin," in violation of 21 U.S.C. § 846; two counts of "Extortion," in violation of 18 U.S.C. § 1951(a), 1951(b)(2) & 2; and eleven counts of "Firearms in Relation to Crimes of Violence," in violation of 18 U.S.C. § 924(c) & 2.

The careful reader will have noted that Padilla's motion for habeas relief, the subject of this Memorandum and Order, relates only to Padilla's last-listed firearms charges.[6] Padilla's motion does not challenge his convictions or sentences on the other charges.

On the counts of conviction other than the § 924(c) firearms charges, Padilla was sentenced to life terms of imprisonment on 13 counts, and to ten-year or twenty-year terms on the remaining non-firearms charges, to run concurrently with each other and with other counts.

On the firearms counts, the 1998 judgment imposed a five-year term on the first count and

---

[6] *See* n. 2, *supra*, which notes that Padilla does not include Count 77 in his present motion.

twenty-year terms on each additional firearms count, these counts to run consecutively with each other and with all other counts.

Turning again to the issues posed by Padilla's habeas motion and the parties' contentions with respect to them, the governing law has undergone very recent development at the hands of the Supreme Court and Second Circuit. The able counsel in this case have responded with a series of formal and letter briefs, in an effort to trim the sails of advocacy and adjust to the shifting winds of appellate authority.

It is apparent that the parties continue to disagree with respect, *inter alia*, to (1) the validity of most of Padilla's firearms convictions; (2) whether any resentencing of Padilla is necessary or appropriate, in the circumstances of the case; and (3) if there must be a resentencing, the form and extent that process should take. I do not mean to suggest that these are the only issues requiring resolution. Counsel may discern others. Counsel are also at liberty to express disagreement, one hopes respectfully, with any prior statements or expressions of view by the Court.

While I have undertaken in this Memorandum to summarize the present state of the law, I am confident that the Court will profit by further, oral submissions of counsel.

Accordingly, I will call the case for a Zoom-conducted hearing on **Thursday, December 7, 2023,** beginning at **10:30 a.m.**

We will break for lunch and continue during the afternoon, if that is necessary, to allow counsel to fully express their contentions. My purpose is to learn from counsel what they think should happen in the case next, and why they disagree with their adversary's view of what should happen next.

If Mr. Padilla wishes to observe this hearing by means of the Zoom conference, and the

Warden can make the necessary arrangements, the Court will allow it, for humanitarian reasons.[7]

Mr. Padilla would not participate in the hearing, but it seems to me fair to let him watch and listen.

    It is SO ORDERED.

    Signed:  New Haven, Connecticut
                  November 8, 2023

                                        */s/Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge

---

[7] The Court takes judicial notice that Mr. Padilla is currently incarcerated at USP-Lewisburg in Lewisburg, Pennsylvania. https://www.bop.gov/mobile/find_inmate/byname.jsp