**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      -against-

ANGEL PADILLA,

      Defendant.

No. 1:94-CR-0313 (CSH)

**APRIL 2, 2024**

## RULING ON DEFENDANT'S MOTION FOR HABEAS CORPUS RELIEF TO VACATE HIS SENTENCE UNDER 28 U.S.C. § 2255 [Doc. 897]

**HAIGHT, Senior District Judge:**

Defendant Angel Padilla, currently incarcerated in a federal prison following his conviction by a jury on criminal charges in this Court, reiterates his pending motion for habeas corpus relief pursuant to 28 U.S.C. § 2255.

Padilla's habeas motion, filed by leave granted by the Second Circuit, has been previously considered by this Court in a memorandum and order filed on November 8, 2023, and printed at 2023 WL 7386748 ("the November 8 Opinion"), familiarity with which is assumed. After elaborate briefing by able counsel in this case, and in the light of changes in the governing law derived from Supreme Court and Second Circuit authorities, the Court, in the November 8 Opinion, scheduled oral argument in the case for December 7, 2023.

The Court heard counsel's oral submission on that date. A transcript is available as Doc. 942. Having reviewed the entire record, the Court in this Ruling decides the motion.

**I.**

The complete facts and circumstances of the government's case against Angel Padilla, and Padilla's convictions by the jury, are stated in the November 8 Opinion. Those facts and circumstances are not fully repeated in this Ruling. They are restated in part for the sake of clarity.

It is sufficient for present purposes to reiterate that Padilla, the leader of a criminal gang in the Bronx, engaged in a series of violent crimes against numerous individuals, was convicted by a jury on counts of "racketeering and racketeering conspiracy; conspiracy to kidnap and kidnaping; conspiracy to commit murder; murder in aid of racketeering and attempted murder; conspiracy to distribute heroin; and extortion and conspiracy to commit extortion." November 8 Opinion, 2023 WL 7386748, at *4. Padilla's conduct was found to have violated the laws of the State of New York, where the acts in question occurred.

In addition, Padilla was convicted on eleven counts of the use of a firearm in relation to a crime of violence, in violation of the federal firearms statute, 18 U.S.C. § 924(c). "Each firearm count accompanied a particular substantive or conspiracy charge alleging use of a gun against a named victim." November 8 Opinion, 2023 WL 7386748, at *4. A conviction under the firearms statute results in an enhanced sentence: § 924(c)(1)(A) provides that a firearms statute sentence shall be imposed "in addition to the punishment provided for" the underlying offense. In *United States v. Taylor*, 142 S.Ct. 2015, 2018-19 (2022), the Supreme Court said that if an offense "qualifies as a 'crime of violence' under § 924(c)(3)(A), the same individual may face a second felony conviction and years or decades of further imprisonment."

The firearms statute charges against Padilla are the only counts of conviction he challenges in his present habeas motion. Padilla's other convictions are not directly implicated by the issues

2

that arise in this motion.

## II.

With respect to Padilla's convictions on crimes other than the firearms statute violations, this Court sentenced Padilla on each of superseding indictment Counts 1, 2, 10, 12, 14, 28, 30, 35, 36, 42, 44, 50 and 51 to life imprisonment.   On each of Counts 9,11, 13, 15, 27, 29, 34, 38, 41, 43, 49 and 52, Padilla was sentenced to a ten-year term of imprisonment to run concurrently with the other counts.  On Counts 54 and 55, Padilla was sentenced to twenty-year terms of imprisonment, to run concurrently with the other counts.  Padilla's present habeas motion is not directly concerned with these convictions and sentences,

Padilla's firearm statute violations, which his habeas motion does challenge, bore Count numbers 59, 60, 65, 67, 69, 70, 72, 73, and 76-78.  On Count 59, Padilla was sentenced to a  five-year term of imprisonment, to run consecutively to the other counts.  For each of Counts 60, 65, 67, 69, 70, 72, 73, 76, 77 and 78, Padilla was sentenced to twenty-year terms of imprisonment, to run consecutively to the other counts.

I passed those sentences upon Padilla in June 1998, at which time the governing firearms statute, 18 U.S.C. § 924(c), was in its original form.  As the November 8 Opinion recites, the statute prohibited the use of a firearm in connection with a "crime of violence," a concept originally defined by the statute's narrowly cast "elements clause," § 924(c)(3)(A), or by the more broadly phrased "residual clause," § 924(c)(3)(B).  A defendant's predicate crime falling within either clause constituted a "crime of violence" for purposes of the firearms statute.  2023 WL 7386748, at *1. That was the law in effect when Padilla was sentenced in 1998.

That governing firearms law was  changed when the Supreme Court decided *United States*

*v. Davis*, 588 U.S. _____, 139 S. Ct. 2319 (2019), and *United States v. Taylor*, 596 U.S. _____,

142 S. Ct. 2015 (2022).  *Davis* and *Taylor* held that the residual clause of the firearms statute was

unconstitutional, as impermissibly vague.  That constitutional ruling is applied  retroactively.  *See*

November 8 Opinion, 2023 WL7386748, at *1 (citing appellate cases).

 It follows that a district court, confronted by a motion to dismiss a firearms charge as a

matter of law,  must now determine whether a particular defendant's predicate crime underlying a

§ 924(c) conviction is a "'crime of violence' under section 924(c)'s remaining 'elements' clause."

*United States v. Pastore*, 83 F.4th 113, 118 (2d Cir. 2023).

A defendant whose conduct does not fall within the  narrow definition of the elements clause

cannot be prosecuted under § 924(c) of the firearms statute.  That is the retroactive holding of the

Supreme Court in *Davis* and *Taylor*.  Padilla's § 924 convictions and sentencing in 1998 preceded

*Davis* and *Taylor*, and were valid at the time.  However, the retroactive effect of *Davis* and *Taylor*

poses the question  whether Padilla's firearms convictions and sentences must now be vacated and

Padilla be resentenced. That is the relief Padilla seeks in his present habeas motion.

### III.

While the Supreme Court's decisions in *Davis* and *Taylor* adjudicate the constitutional

validity of the firearms statute in general terms, they do so in response to the particular

circumstances presented by those cases.  Subsequently, the Second Circuit has had occasion to

consider the firearms statute's constitutionality in different factual settings.  The most  recent cases

include *United States v. Pastore*, 83 F.4th 113 (2d Cir. 2023), an amended decision the Second

Circuit filed on October 2, 2023, and *United States v. Gomez*, 87 F. 4th 100  (2d Cir. 2023), filed on

November 21, 2023.

Those decisions, when combined with *Davis* and *Taylor*, furnish the governing law on Padilla's habeas motion, which challenges the validity of Padilla's several convictions for violations of § 924(c)(3) of the firearms statute.  As noted *supra*, the validity of a particular firearms statute conviction depends upon whether the predicate crime underlying the firearms conviction is a "crime of violence" under the statute's elements clause (the sole post-*Davis* basis for a firearms statute violation).

The elements clause of the firearms statute defines a "crime of violence" for purposes of the statute as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).   In *Pastore*, the Second Circuit said,  "To determine whether an offense is a crime of violence under the elements clause, courts employ what has come to be known as the 'categorical approach.'" 83 F.4th at 118 (citation and internal quotation marks omitted).   Under that analysis,  the Second Circuit continued in *Pastore*:

> [W]e identify the minimum criminal conduct necessary for conviction under a particular statute by look[ing] only to the statutory definitions – i.e., the elements – of the offense.  We then evaluate whether this minimum conduct falls within the definition of a "crime of violence under section 924(c)(3)(A)."

*Id*. (citations and internal quotation marks omitted).

The Second Circuit regards "determining the elements of a particular statute" as "usually a straightforward endeavor," but adds that when certain statutes "list elements in the alternative, and thereby define multiple crimes, we have deemed the statute to be divisible and applied a 'modified' categorical approach." *Id.* (citations omitted).  Under that approach –

> [W]e may review a limited class of documents  from the record of conviction to determine what crime, with what elements, a defendant

5

> was convicted of. . . . [C]ourts may consult the indictment, jury
> instructions, or plea agreement and colloquy to determine the offense
> of conviction. We then return to the categorical analysis and compare
> the elements of the offense of conviction with section 924(c)(3)(A)'s
> definition of a crime of violence.

*Id.* at 118-19 (citations and internal quotation marks omitted).

This relatively complex form of analysis is appropriate in the case at bar, where Padilla, an active gang leader, was convicted of a number of firearms statute violations, each violation based upon a different predicate offense.

The presence of a firearm somewhere in the factual background of a case does not always bring the case within the requisite narrow confines of the firearms statute's elements clause. *Pastore*, a gang-related case of violence like that of Padilla, posed the question whether defendant's firearms statute charge of conviction was "properly based on a crime of violence." *Id.* at 119. To answer that question, the Second Circuit said, "[W]e must determine whether any one of the section 924(c) predicate offenses listed in his indictment – racketeering conspiracy, conspiracy to commit murder in aid of racketeering, attempted murder in aid of racketeering, and murder-for-hire conspiracy – categorically involves the use of force." *Id.* (citations and internal quotation marks omitted). *Pastore* holds: "Conspiracy to murder is *not* a qualifying offense under section § 924(c)," so that "a RICO conspiracy cannot qualify as a crime of violence, even if marked by violence or directed to violent objectives." *Id.* (emphasis in original; citations and internal quotation marks omitted).

However, *Pastore* goes on to hold that under New York law, attempted murder *is* a "crime of violence" for federal firearms statute purposes. The Second Circuit reasoned: "Since attempted murder requires both an intent to use physical force and a substantial step toward the use of physical

6

force, it satisfies the 'attempted use . . . of physical force' element under section 924(c), 18 U.S.C. § 924(c)(3)(A), and thereby qualifies as a crime of violence." 83 F.4th at 121.

In *Gomez*, the Second Circuit held as a matter of first impression that a murder conviction based upon a jury's application of the *Pinkerton* theory[1] "is a categorical crime of violence that can support a § 924( c) conviction." 87 F.4th at 103. The Second Circuit reasoned:

> Under a *Pinkerton* theory the defendant is convicted of the substantive offense  – *not of conspiring to commit the offense*  – so he has committed a crime of violence if the substantive offense is a crime of violence.  Because *Pinkerton* does not transform a substantive offense into a conspiracy offense, it does not implicate *Davis*.

*Id*. at 104 (emphasis added).

Reverting to Padilla's situation, we see from the cited authorities that if in respect of a particular murder Padilla's conduct was  that of a conspirator, a firearms charge does not lie against him.  Conspiring to commit murder is not a crime of violence for purposes of the firearms statute. On the other hand, if Padilla's conduct constituted attempted murder, or brought him within the *Pinkerton* theory of criminal liability, he may also be charged under the firearms statute, since in that circumstance the underlying offense serves as a valid predicate for the firearms charge.

The lay reader may be puzzled by the diametrically differing results stemming from participating in a conspiracy to murder, as opposed to attempting a murder.  However,  the Second Circuit's decisions draw the relevant distinctions, which are binding on this Court.

## IV.

As noted in the November 8 Opinion, in addition to convictions on several underlying

---

[1] *Pinkerton v. United States,* 328 U.S. 640, 646-47 (1946).

offenses, the trial jury also convicted Padilla on eleven firearms counts under 18 U.S.C. § 924(c). To reiterate: On Padilla's present habeas motion, the government was confronted by the Supreme Court's retroactive holding in *Davis* and its progeny that the residual clause of the firearms statute, § 924(c)(3)(B), is unconstitutional. That left the physical force (or elements) clause, § 924(c)(3)(A), as the sole permissible basis for a firearms statute violation.

The government responded in Padilla's case by "consent[ing] to vacate § 924( c) convictions where they rest solely on 'crimes of violence' as defined by the residual clause." Gov't Brief [Doc. 899], at 9. The government acknowledged that "kidnaping, conspiracy to kidnap, extortion, conspiracy to extort, and conspiracy to murder do not qualify as crimes of violence under the physical force clause," so that "Padilla's § 924(c) convictions predicated on those crimes alone cannot stand." *Id.* That concession led the government to consent to the vacatur of Counts 60 and 78 in the superseding indictment.

The government contends that Padilla's other § 924( c) convictions "remain valid as they are predicated on at least one 'crime of violence' as defined by the physical force clause" or "on a drug trafficking crime," *id.*; and resentencing Padilla is in any event unnecessary, since he is serving mandatory life sentences unaffected by the firearms statute convictions, *id.* at 23.

That partial concession by the government did not initially satisfy Padilla. His earlier brief on this motion pressed for broader vacaturs of the firearms convictions, and a full-scale resentencing. However, that brief antedated the Second Circuit's opinions in *Pastore* and *Gomez*, with which counsel for Padilla had to deal at the December 7 hearing before the Court.

**V.**

At that hearing, Ms. Baumgartel, of the Federal Defenders Office in this District, argued the

case for Padilla.  While she declined to abandon certain arguments made on behalf of Padilla in earlier briefs, Ms. Baumgartel forthrightly acknowledged that "the result of those two cases" [*Pastore* and *Gomez*] is that Second Circuit precedent forecloses several of our [§] 924(c) challenges."  Hearing Tr. [Doc. 942], at 10: 17-21. "It forecloses the challenges basically to Counts 59, 65, 67, 69, 70, 72, 73, and 76." *Id.* at 10: 21-23.

The government, for its part, concedes that Padilla's convictions under Counts 60 and 78 must be vacated.

The present circumstances of the case, governed by the Second Circuit's most recent authority, gave rise to this submission by Padilla's counsel at the December 7 hearing:

> [T]he sort of bottom line is we would ask the Court to vacate the 924(c) counts that were in the indictment as Count 60 and 78 and to conduct a de novo sentencing on the remaining charges at which time we would be asking the Court to impose what we believe is then the mandatory minimum of 45 years.

Hearing Tr. at 11: 22 to 12: 3.

Counsel's concept of resentencing led to this exchange with the Court:

> The Court: If all I'm doing is vacating two of the eleven or something like that, and there are a number of them still valid, how do I in this opinion reach those sentences at all?
>
> Counsel for Padilla: So whenever the Court vacates a 924(c) count, it has the authority to conduct a de novo resentencing on the remaining counts and that's discretionary.
>
> The Court: On those counts  --
>
> Counsel:   On every count.
> . . .
> The Court: Even counts that weren't vacated?
>
> Counsel: Correct.

9

The Court: Is that right?  Do I really have that authority?

Counsel: Yes. . . .
. . .  [W]henever the Court vacates a 924(c), it has the discretion to conduct a de novo resentencing on the remaining counts. So at that point, it would be within Your Honor's discretion to conduct a full de novo resentencing on everything and then decide what sentence to impose.

The Court: . . . So your submission is that the government's acknowledgment of that two of the eleven, or whatever it is, of Section 924(c) convictions have to be vacated, just those two, that is sufficient to open the door to a resentence and reconsideration of everything including counts which were not involved in the acknowledgment at all, is that it?

Counsel: Yes.  That is our position.

*Id.* at 12: 13 to 14: 7.

Mr. Rehn argued the case for the government.  The government's principal position is that Padilla is not entitled to a resentencing, plenary or otherwise.  Two contentions are made in support of that proposition.  The government's first contention is what has become known as "the concurrent sentence doctrine," which if applicable would preclude the Court on Padilla's habeas motion from giving any resentencing effect to the consensual vacatur of the two designated § 924(c) convictions. The government's second contention, pleaded in the alternative, is that while the Court, having vacated those two convictions, has the discretion to conduct a resentencing, in the circumstances of the case it should refrain from doing so.  I consider these two contentions in order.

**A.  The Concurrent Sentence Doctrine**

The government's invocation of the concurrent sentence doctrine comes rather late in the game.

Padilla's motion for habeas relief under 28 U.S.C. § 2255 was filed on May 29, 2020 [Doc.

897].  Padilla based his motion on the Supreme Court's retroactive decision in *Davis*.  The government resisted any habeas relief for Padilla.  The parties exchanged an elaborate series of formal and letter briefs, addressing a number of issues.  The government made no mention of, and placed no reliance upon, the concurrent sentence doctrine until it filed a letter brief on November 23, 2022 [Doc. 928], which said: "Pursuant to the concurrent sentence doctrine, this Court should decline to consider Padilla's challenge to his Section 924(c) convictions because he is currently serving thirteen life sentences unaffected by these claims."  Doc. 928, at 3. Those circumstances had been apparent over two years earlier, when Padilla filed his habeas motion.

At this late date, the government relies for the first time upon the concurrent sentence doctrine as a basis for denying Padilla any habeas relief.  The doctrine is "a rule of judicial convenience" which "allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of identical concurrent sentences."  *Kassir v. United States*, 3 F. 4th 556, 561 (2d Cir. 2021) (citations and footnotes omitted). In *Kassir*, the Second Circuit also said:  "we exercise our discretion not to review Kassir's collateral attack on only one of his convictions under the concurrent sentence doctrine."  *Id.*

In the case at bar, it is not clear that we are "in the presence of identical concurrent sentences," the prerequisite of the concurrent sentence doctrine.  Each of the § 924( c) charges of Padilla's convictions (the two vacated on the government's consent and the others as well) contain mandatory $50 special assessments.  In *Ray v. United States*, 481 U.S. 736 (1987), the Supreme Court "granted certiorari to review the role of the concurrent sentence doctrine in the federal courts," but noted that "[i]t now appears . . . that petitioner is not in fact serving concurrent sentences." *Id.* at 737.  That was because, in a multi-count criminal case, the district court imposed a $50

assessment on each count of conviction, which led the Court to conclude that "[s]ince petitioner's liability to pay this total depends on the validity of each of his three convictions, the sentences are not concurrent." *Id.*

That reasoning would seem applicable to Padilla's situation. *Ray* involved a direct appeal, whereas the case at bar presents a collateral attack on Padilla's convictions; but it is not clear why the result should be different. Assuming, however, without deciding that the holding in *Ray* does not govern this case, and this Court could apply the concurrent sentence doctrine to Padilla's case, whether or not to do so rests in the Court's discretion. I would decline to exercise that discretion by applying the doctrine in a manner that forecloses adjudication of the merits of Padilla's motion for habeas relief. The motion is too serious, in legal and humanitarian terms, and its merits had been earnestly contested by the parties before it occurred to the government to seek a disposition by means of the concurrent sentence doctrine. The better course for the Court is to decide Padilla's habeas motion on its merits.

**B**.  **Resentencing**

The government having consented to the vacatur of two particular firearms convictions, the original sentence imposed on Padilla in 1998 is no longer valid, and Padilla must be resentenced, at least to that extent. The parties dispute whether a more far-reaching resentencing is appropriate or required.

**1.**  ***The Case for Padilla***

Ms. Baumgartel, counsel for Padilla, asks the Court to conduct a *de novo* sentencing on all remaining charges of conviction, and then impose a "mandatory minimum of 45 years." Hearing Tr. [Doc. 942], at 11: 21 to 12: 3. Counsel said during the hearing that Padilla "is now over 70.

He's been in prison for more than 30 years.  He has a very good prison record.  I think there are many equitable reasons to resentence him."  *Id.* at 15: 9-12.   Counsel expanded on that concept in her reply argument at the hearing, which it is useful to quote at some length:

> . . .[W]e have the opportunity for a meaningful sentencing relief and so the Court in its discretion should not apply the concurrent sentence doctrine and the Court in its discretion should order a de novo resentencing.   Obviously, the sentencing landscape was radically different when Mr. Padilla was initially sentenced[,] including mandatory guidelines that really constrained the Court's discretion.
>
> Obviously, he was convicted of serious crimes, but part of what the Court would have the ability to do in a de novo resentencing is to decide what his sentence should be literally 30 years later.  And so it would give the Court the opportunity to see how he has comported himself during the last 30 years, the significant rehabilitation that he's undertaken, the way that he's changed his life, and also just where he is at this advanced age.
>
> And so at the end of the day in a de novo resentencing, the Court would, obviously, have the ability to reimpose a life sentence, or to reimpose some other very significant sentence, but the Court would have the opportunity to decide what is right, what is the right sentence given all the information and facts that you have now, and there's no reason for the Court not to take that opportunity.

*Id.* at 24: 24 to 25: 25.

## 2.  *The Case for the Government*

AUSA Rehn argued for the government that quite apart from the concurrent sentence doctrine (which I have rejected in this case), when the Court vacates the two § 924( c) sentences on the merits, "there is no need for a resentencing in this case because the defendant's other convictions shouldn't be  – there's no grounds to consider resentencing on the defendant's other convictions." *Id.* at 19: 20-24.

Mr. Rehn's argument continues:

13

. . . [I]f there's reason to believe that the vacated convictions affected the sentence that the district court imposed on the other crimes of conviction, so if there was some reason to think, for example, that the Court either gave a higher or lower sentence on the other counts because of the fact that the defendant was convicted on the vacated counts, then it may be appropriate for the district court to exercise its discretion to conduct a de novo resentencing on all of the counts.

But in this case, it's clear from the record that . . . your sentencing of the defendant on these 924(c) counts related to the kidnapping charges had no effect on the fact that the defendant was sentenced to life in prison on a number of murder counts that had nothing to do with those 924(c) counts. And then in addition, the defendant was sentenced to mandatory consecutive sentences for the firearm charges relating to those murder counts.

There would be no reason to think that the district court would have arrived at a different sentence as to those counts if, for example, the defendant hadn't been charged with or the jury hadn't convicted him on the firearms counts related to the kidnapping part.

And so we would submit that while it is true that the Court has the discretion to decide whether to conduct a de novo resentencing as to all of the counts, this is an example of a case where there's just nothing to indicate that the defendant would have received a different sentence if not for these counts that the Court may choose to vacate in response to the defendant's motion.

*Id.* at 20: 2 to 21: 10.

## VI.

Padilla moves for habeas relief pursuant to 28 U.S.C. § 2255. The Second Circuit has had frequent occasion to consider the proper practice under that section.

In *United States v. Peña*, 58 F.4th 613, 618 (2d Cir. 2023), defendant Jose Peña and two others were charged in a multi-count indictment with conspiring to murder two individuals and with actually murdering them. Peña was convicted by jury trial on substantive counts of participating in the conspiracy and physically murdering the victims. Peña was also convicted on two counts

14

under the firearms statute, 18 U.S.C. § 924 (j), for contemplated use of physical force in relation to the murder conspiracy.

Peña was convicted on these charges in 2013, and sentenced by the district court in 2014, to five concurrent terms of life imprisonment, one for each count.  Those events antedated the Supreme Court's 2019 decision in *Davis*.  Peña moved for habeas relief, relying upon *Davis*.  The government consented to the vacatur of the two firearms convictions, "agreeing that those convictions could not stand after *Davis*."  58 F.4th at 617.  The question then arose: What is the appropriate form of resentencing?

The Second Circuit's answer in *Peña* is that 28 U.S.C. § 2255 furnishes the governing law. The Second Circuit observed in its decision that "Section 2255 grants district courts the discretion to choose among four remedies when reviewing a sentence that was not authorized by law or is otherwise open to collateral attack." 58 F.4th at 618.  The *Pena* decision continued: "A court may: '[1] vacate and set the judgment aside . . . and discharge the prisoner or [2] resentence him or [3] grant a new trial or [4] correct the sentence as may appear appropriate.'" *Id*. (citing and quoting 28 U.S.C. § 2255(b) with  parenthetical numbers added).  *Id.*

In *Peña*, the Second Circuit reviewed its decisions on resentencing, including *United States v. Rigas*, 583 F.3d 108 (2d Cir. 2009), which held that "the defendants were entitled to *de novo* resentencing because *de novo* resentencing is required where a conviction is reversed in part on appeal."  *Peña*, 58 F.4th at 619 (quoting *Rigas*, 583 F.3d at 115, 118).  The Second Circuit refused in *Peña* to apply that rule to cases which, like Padilla's, arise under § 2255.  The *Pena* decision reasoned: "While the default rule in *Rigas* may apply whenever a conviction is reversed on direct appeal, § 2255's plain text, which vests district courts with discretion to select the appropriate relief

from a menu of options, precludes us from applying the *Rigas* default rule to all cases that arise in the § 2255 context." 58 F.4th at 619. The *Peña* court noted that "[w]e have held that judges have discretion with respect to resentencing in the § 2255 context," and said that "§ 2255's statutory text continues to grant district courts discretion in the matter."' *Id.* (citations omitted).

The Second Circuit's analysis of the facts in *Peña* reveals that court's conclusion that Peña's ultimate sentence was not affected by the jury's consideration of the firearms statute charges (permissible at the time, subsequently invalidated by *Davis*). In that regard, the Second Circuit said: "Although Peña's convictions on Courts Seven and Eight [the firearms counts] are no longer valid following *Davis*, the jury's verdict demonstrates that it would have found that death resulted from Peña's murder-for-hire conspiracy had it received proper instructions on Counts Four, Five and Six [the substantive counts]." *Id.* at 622.

The Second Circuit concluded its opinion in *Peña* with these instructive and cautionary notes, worth quoting at length:

> [T]he district court did not abuse its discretion in denying to resentence Peña *de novo*. Any resentencing would have been 'strictly ministerial,' serving simply to delete the sentences on the now-vacated counts. . . . [A] district court's discretion to not conduct a *de novo* resentencing has limits. It may be that in most cases in which resentencing would not be strictly ministerial, a district court abuses its discretion when it denies *de novo* resentencing. But we need not and do not attempt today to define the circumstances under which a district court abuses its discretion in denying *de novo* resentencing. It is enough, in light of the facts of the case at bar, to conclude only that a district court may properly deny *de novo* resentencing when the exercise could be an empty formality, as it would be here.

*Id.* at 623 (citation omitted) .

In *Tellier v. United States,* No. 21-2959, 2023 WL 3608394 (2d Cir. May 24, 2023), the

Second Circuit by summary order expanded on these themes.  Section 2255(b), the Second Circuit observed in *Tellier*, "vests district courts with discretion to order 'appropriate' relief" when, *inter alia* (as in the case at bar), "a sentence is not authorized by law or is otherwise open to collateral attack . . . ."  2023 WL 3608394, at *2.  In that circumstance, *Tellier* continued, "the district court may choose between four statutorily prescribed remedies 'as may appear appropriate.'" *Id.* (citing 28 U.S.C. §2255(b)).  "Specifically, the court is permitted to (1) vacate and set the judgment aside; (2) resentence the petitioner, (3) grant a new trial, or (4) correct the sentence." *Id.*  In *Tellier* the Second Circuit then instructed district judges how to choose the remedy for a particular case:

> Notably, when the sentences that are the subject of the petition are "truly interdependent," a district court has authority to choose from the remedial options set forth in section 2255 – and thus has discretion to conduct de novo resentencing on non-vacated counts. But if resentencing would be "strictly ministerial" or an "empty formality," such as when one or more of the sentences carry mandatory minimum sentences of life imprisonment, then a district court does not abuse its discretion by declining to conduct de novo resentencing on counts that are not vacated. *Peña*, 58 F.4th at 623.

2023 WL 3608394, at *2 (citing and quoting *United States v. Gordils*, 117 F.3d 99, 104 (2d Cir. 1997)).

A  "truly interdependent sentence" is  identified by the Second Circuit in *Gordils* as a case "where a mandatory consecutive sentence affects the applicable offense level under the guidelines;" in that circumstance, § 2255 "provides sufficient statutory authority for a district court to exercise its jurisdiction to resentence defendants 'as may appear appropriate.'" *Gordils*, 117 F.3d at 104. That principle does not apply, *Tellier* teaches, to a case where "one or more of the sentences carry mandatory minimum sentences of life  imprisonment." *Tellier*, 2023 WL 3608394, at *2. In *that* circumstance, "a district court does not abuse its discretion by declining to conduct *de novo*

resentencing on counts that are not vacated." *Id.* (citations omitted).

The Second Circuit's decision in *Tellier* also cited *United States v. Ayyad*, No. 20-3832, 2023 WL 1975682 (summary order) (2d Cir. Feb. 14, 2023), *cert. denied,* 144 S. Ct. 250, 217 L. Ed. 2d 115 (2023). The Second Circuit's decision in *Ayyad* followed and applied *Peña* on the issue of resentencing.

The defendant in *Ayyad* was convicted of multiple felonies "in connection with the 1993 World Trade Center bombing in which six people were killed and more than a thousand injured, and in which the bombers caused millions of dollars in damage." I have quoted the district court opinion, *Ayyad v. United States*, No. 16-CV-4346 (LAK), 2020 WL 5018163, at *1 (S.D.N.Y. Aug. 24, 2020) (Kaplan, *J.*). The counts of conviction included two charges under § 924(c) of the firearms statute. The predicate act for the first of these firearms charges, Count Nine, was an assault on a federal official. The predicate act for the second, Count Ten, was a conspiracy to destroy buildings. Each of these firearms charges carried a consecutive term of imprisonment of 360 months.

Defendant was sentenced to a total of 1,405 months: 685 months for Counts One through Six and Count Eight (the non-firearms charges) and 360 months for each of Count Nine and Count Ten (the firearms charges). Defendant filed a habeas motion under §2255, seeking to dismiss the firearms convictions under *Davis* and its progeny. The government consented to the vacatur of Count Ten, the second firearms charge, in the light of *Davis*, but contended for the validity of the first firearms charge.

The district court agreed with the government, denied the balance of defendant's habeas motion, "vacated the conviction on one [firearms] count which carried a consecutive term of

imprisonment of 360 months," and declared his intention to "enter an amended judgment" reflecting that ruling. 2020 WL 5018163, at *1. That expression of judicial intent prompted a further motion by defendant, who contended that "he is entitled to a full resentencing." *Id.* In these circumstances, the parties came before District Judge Kaplan, who remarked: "The question before the Court is whether it is obliged to conduct a full resentencing or, alternatively, may enter an amended judgment reducing the aggregate term of imprisonment by 360 months." *Id.*[2]

Judge Kaplan considered the matter, denied defendant's motion for a *de novo* resentencing, and instead entered "an amended judgment reflecting the vacatur of Count 10 and reducing movant's term of imprisonment by 360 months." *Id.*, at *3.

Defendant Ayyad appealed that amended judgment. He argued in the Second Circuit that "when a resentencing results from a vacatur of a conviction, *de novo* sentencing is the default rule." 2023 WL 1975682, at *1. That argument failed in the Court of Appeals. The Second Circuit said of defendant's contention:

> But this Court recently rejected this argument and held that the "default rule" applies only when "a conviction is reversed on direct appeal." *United States v. Peña*, 58 F.4th 613, ——, No. 20-4192, 2023 WL 1456387, at *4 (2d Cir. Jan. 27, 2023). In light of our holding in *Peña*, the district court was not required to conduct *de novo* resentencing after vacating Ayyad's conviction on Count Ten. When, as here, a conviction is vacated by the district court after a successful habeas challenge, § 2255 "vests district courts with discretion to select the appropriate relief from a menu of options," including either conducting de novo resentencing or entering an amended judgment. *Id.*

2023 WL 1975682, at *1.

---

[2] The original sentence had been entered by the trial judge, the late District Judge Kevin Duffy.

For that reason, in *Ayyad* the Second Circuit affirmed the district court's ruling that a plenary rehearing *de novo* was not required. The question, the Court of Appeals said, lay within District Judge Kaplan's discretion. The Second Circuit held that in the circumstances of the case, "the district court did not abuse its discretion in denying Defendant's request for *de novo* resentencing." *Id.*

In pressing his resentencing request in *Ayyad*, the defendant relied upon his "extraordinary institutional record." *Id.* However, the Second Circuit noted and accepted the district court's reasoning that "given the nature of Ayyad's crimes, the significant amount of time remaining on his sentence, and Ayyad's current age – resentencing would not realistically lead to a sentence short enough for Ayyad to be released within his lifetime." *Id.* "Such a decision," the Second Circuit held in *Ayyad*, "is not an abuse of discretion," given the district court's power to "properly deny *de novo* resentencing when the exercise would be empty formality, as it would be here." *Id.* (citing and quoting *Peña*, 2023 WL 1456387, at *7).

## VII.

These cited and quoted Supreme Court and Second Circuit decisions make it clear that in Padilla's case, a full plenary resentencing would not be appropriate.

Padilla finds himself in the same position as Peña and Ayyad, the defendants whose efforts to obtain a plenary resentencing were rejected by the Second Circuit.

After their convictions on multiple counts, Peña and Ayyad received lengthy sentences on certain counts which were not affected by the vacatur of firearm counts accompanying other counts. The habeas remedy to which Peña and Ayyad were entitled consisted of the entry of an amended judgment reducing the aggregate term of imprisonment by eliminating the sentences imposed under

20

the vacated firearms counts.  Their requests for a full plenary resentence was denied. The sentences imposed on non-vacated counts were not disturbed by the habeas motions or the district court's rulings on them.

Padilla is in the same situation.  As the leader of a violent gang, Padilla participated in a number of murders and attempted murders of other and different individuals, which are separate from the incidents involved in the particular firearms counts whose vacatur the government does not oppose.  The cited cases indicate that in the Second Circuit, an amended judgment limited to eliminating the sentence imposed under vacated firearms counts is appropriate, rather than a plenary resentencing affecting all the counts of conviction, whether subject to vacatur or not.  Accordingly, Padilla's habeas motion will be resolved by this Court's entry of an amended judgment consistent with this Ruling.

## VIII.

## CONCLUSION

For the foregoing reasons, the motion of Defendant Angel Padilla to vacate a judgment under 28 U.S.C. § 2255 [Doc. 897] is GRANTED IN PART and DENIED IN PART.

Counsel for the United States are directed to settle an Amended Judgment, consistent with this Ruling, on five days' notice, within 30 days of the date of this Ruling.

It is SO ORDERED.

Dated:    New York, New York
             April  2, 2024


                                        */s/Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT,  JR.
                                        Senior United States District Judge

21